

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| LANGHAM BRANCH CREEK § <br> QUARRY, LLC, § <br>     Plaintiff, § <br> § <br> vs. § <br> § <br> YORK COUNTY, YORK COUNTY § <br> COUNCIL, and YORK COUNTY PLANNING § <br> AND DEVELOPMENT SERVICES § <br> DEPARTMENT, § <br>     Defendants. § | Civil Action No. 0:22-0799-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO EXPEDITE AND DENYING ITS PETITION
FOR A WRIT OF MANDAMUS AND MOTION FOR A TEMPORARY INJUCTION**

**I.     INTRODUCTION**

Plaintiff Langham Branch Creek Quarry (LBCQ) filed an amended complaint against York County, York County Council, and the York County Planning & Development Services Department (Planning Services) (collectively, Defendants). LBCQ originally filed this action in the York County Court of Common Pleas. Defendants subsequently removed it to this Court.

LBCQ brings three causes of action: (1) a writ of mandamus, (2) declaratory and injunctive relief under the Fourteenth Amendment of the U.S. Constitution and Article I, § 3 of the South Carolina Constitution (Due Process), and (3) relief under 42 U.S.C. § 1983. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

Pending before the Court are LBCQ's Petition for a writ of mandamus, motion for temporary injunction, and motion to expedite consideration. Having carefully considered the motions, the petition, the response, the reply, the record, and the relevant law, the Court will grant the motion to expedite, but deny the petition for a writ of mandamus and the motion for a temporary injunction.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     *Factual History*

#### 1.     *Proposed Surface Mining Expansion*

This action concerns the land use of a parcel of real property in York County (the Property). The Property is zoned within the Agricultural Conservation District (AGC District). Since at least 2015, the Property has been used for surface mining of sand and gravel. There is currently a special exception permit for the Property that allows surface mining to take place, which was obtained by Omarr, LLC, the Property's previous owner.

LBCQ entered into a purchase agreement for the Property in October 2020, with plans to expand the surface mining operation on the Property. Since that time, LBCQ has spent more than $800,000 conducting assessments and evaluations and taking other steps to ensure that the Property meets the practical and legal requirements for the envisioned surface mining expansion. LBCQ closed on the Property in February 2022.

In April 2021, LBCQ contacted Planning Services about the expansion. The County eventually instructed LBCQ that it would need to apply for a new special exception permit, rather than modify the existing permit, because the proposed expansion was too different.

In August 2021, LBCQ's parent company submitted a Preliminary Site Analysis to the County's Zoning Division. Later that month, Planning Services notified LBCQ that the proposed expansion had received conditional approval. In September 2021, LBCQ submitted its Special Exception Application (SEA), which addressed comments from the conditional approval.

### 2.     *"Recode York County"*

In October 2019, independent of LBCQ's efforts to secure a zoning exception, the County began a process of reviewing, updating, and realigning its Zoning and Subdivision Codes, a project it calls "Recode York County." This new code classifies surface mining operations such as LBCQ's proposed expansion as "Resource Extraction, Major," which are not allowed a special exception in the AGC district. LBCQ became aware of this endeavor in November 2021.

The new zoning code (the Ordinance) received first reading from the York County Council on December 6, 2021, second reading on January 18, 2022, and third reading on February 22, 2022. At the third reading, the York County Council unanimously adopted the Ordinance, which went into effect on March 1, 2022.

### 3.     *Board of Zoning Appeals Meetings*

LBCQ's SEA was originally noticed and placed on the agenda for the December 2021 Board of Zoning Appeals (BZA) meeting. Due to community opposition to the SEA, however, LBCQ chose to defer its application to the next meeting, in January 2022, to address concerns. In that time, LBCQ amended the SEA to "lessen a purported wetlands impact on approximately 14 acres of the Property per discussions with the County's representatives." Pl. Br. at 7. It also conducted meetings with the public to address concerns. The SEA was noticed to the public for comment. Additionally, during that time, Planning Services notified LBCQ that it had reversed

3

its conditional approval and was now recommending denial of the SEA because the proposed expansion was incompatible with land use in the area.

Before the January 2022 meeting, several LBCQ officials contracted COVID-19. Because of this, they sought to defer hearing of the SEA to the February 2022 meeting. Rachel Grothe (Grothe), the County's Zoning and Development Standards Administrator, informed LBCQ that the request for deferment could be denied, and the SEA would be rejected if heard at the January 2022 meeting without LBCQ representatives present. Consequently, LBCQ withdrew the SEA from consideration for the January 2022 meeting.

When LBCQ attempted to renew its application in late January 2022, Grothe informed it that the new application would require renoticing, even though it had been noticed for the January 2022 meeting. So, LBCQ refiled the application and repaid the fee for the SEA to be placed on the March 2022 agenda. When the Recode passed in February 2022, LBCQ was notified that its SEA had been removed from the March 2022 agenda.

### B.  *Procedural History*

LBCQ filed this action in state court where a hearing was scheduled, but Defendants removed this action before it occurred. LBCQ filed an amended complaint and the instant motion for injunctive relief and a writ of mandamus. LBCQ also filed a BZA Administrative Appeal Application challenging the decision to remove the SEA from the March 2022 agenda.

The next BZA will occur on May 10, 2022. LBCQ asks this Court to rule on its motions by April 22, 2022 to allow time to notice its SEA before the meeting.

### III. LEGAL STANDARD

#### A. *Writ of Mandamus*

Under South Carolina law, a writ of mandamus is "the highest judicial writ known to the law." *Sanford v. South Carolina State Ethics Comm'n*, 685 S.E.2d 600, 605 (S.C. 2009). The "principal function" of a writ of mandamus is "to command and execute, and not to inquire and adjudicate." *Id*. "[I]t is not the purpose of the writ to establish a legal right, but to enforce one which has already been established." *Id.* at 605–06.

> [T]o obtain a writ of mandamus requiring the performance of an act, the applicant must show (1) a duty of the opposing party to perform the act, (2) the ministerial nature of the act, (3) the applicant's specific legal right for which discharge of the duty is necessary, and (4) a lack of any other legal remedy.

*Id.* at 606. The South Carolina Supreme Court has explained:

> The duties of public officials are generally classified as ministerial and discretionary (or quasi-judicial). The character of an official's public duties is determined by the nature of the act performed. The duty is ministerial when it is absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts. It is ministerial if it is defined by law with such precision as to leave nothing to the exercise of discretion. In contrast, a quasi-judicial duty requires the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued.

*Richland Cnty. v. South Carolina Dept. of Revenue*, 811 S.E.2d 758, 766 (S.C. 2018) (citations omitted).

#### B. *Injunctive Relief*

##### 1. *Temporary Restraining Order or Preliminary Injunction*

LBCQ's motion seeks a "temporary injunction," which the Court interprets to be a motion for a temporary restraining order. In any case, the substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same. *See Virginia v.*

5

*Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying the preliminary injunction standard to a request for a temporary restraining order).

### 2. *Preliminary Injunction Factors*

Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction should issue only when the plaintiff can "establish [1] that [it is] likely to succeed on the merits, [2] that [it is] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The burden is on the party seeking injunctive relief to show it is entitled to the relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 443 (1974).

"[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010). Thus, even a strong showing of likely success on the merits cannot compensate for failure to show likely injury. *Winter*, 555 U.S. at 21–22. And, irreparable injury alone is insufficient to support equitable relief. *See id.* at 23 (holding irreparable injury was likely to occur, but holding injunctive relief was improper because of the burden on the government and the impact on public interest). In other words, "[a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

"Given [the] limited purpose [of a preliminary injunction], and given the haste that is often necessary . . . , [they are] customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Because preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary

6

standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017).

### 3.     *Prohibitory or Mandatory Injunction*

An injunctive "may be characterized as being either prohibitory or mandatory." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014). "Whereas mandatory injunctions alter the status quo, prohibitory injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Id.* at 236 (internal quotation and citation omitted). The Fourth Circuit has "defined the status quo for this purpose to be the last uncontested status between the parties which preceded the controversy." *Id.* (internal quotation and citation omitted).

"Mandatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) (citation omitted). "Because preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power, [appellate courts] should be particularly exacting in its use of the abuse of discretion standard when it reviews an order granting a preliminary injunction." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (internal quotation, alteration and citation omitted). "Furthermore, when the preliminary injunction is mandatory rather than prohibitory in nature, [a court's] application of this exacting standard of review is even more searching." *Id.* (internal quotation and citation omitted).

IV.     DISCUSSION AND ANALYSIS

As a preliminary matter, "Rule 65 does not require an evidentiary hearing[,]" so long as "the party opposing [the injunctive relief has] a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc.*, 415 U.S. at 433 n.7.  The Court must ensure, however, "relief follows only after consideration of all facts and arguments deemed important by the parties." *Drywall Tapers & Pointers of Greater NYC, Local 1974 v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Can.*, 537 F.2d 669, 674 (2d Cir. 1976).

In *Drywall Tapers*, the Second Circuit held "the documentary evidence presented to [the district court] by both sides was sufficient to . . . enable the court to decide whether [injunctive relief] should issue." *Id*.

Here, Defendants have had "a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc.*, 415 U.S. at 433 n.7.  Accordingly, the Court will decide Plaintiffs' motions without a hearing.  *See* Local Civil Rule 7.08 ("Unless so ordered, motions may be determined without a hearing.").

A.     *Whether LBCQ is entitled to a Writ of Mandamus*

1.     *Whether this Court has authority to issue a writ of mandamus requiring county employees to act*

Although styled as a single request for relief, LBCQ essentially asks the Court to compel two actions by Defendants.  LBCQ asks that its SEA be placed on the agenda for the next BZA meeting.  And, it asks that, at the meeting, the BZA consider its SEA according to the prior zoning ordinance. The parties dispute whether this Court has the power to issue the writ.

Neither side cites binding precedent to support its position.  And, courts appear to disagree as to a federal court's ability to issue a writ in cases like this.  *Compare Harrison v. Jefferson Parish School Board*, 502 F.Supp.3d 1088, 1102 (E.D. La. 2020) ("When a federal court sits in

8

diversity or hears state law pendent claims, it acts as any other court of the state, and can issue writs that the state courts are empowered to grant."), *with White v. City of Annapolis*, 439 F.Supp.3d 522, 544 (D. Md. 2020) ("The court does not have jurisdiction to issue a writ of mandamus requiring state employees to act"). *See also In re Huffines Retail Partners, L.P.*, 978 F.3d 128, 134 (5th Cir. 2020) ("Were the federal court to disallow this important remedy as it is afforded in state court, we would deviate from the *Erie*-backed rule requiring federal court decisions to be modelled on applicable state law.").

In *Gurley*, the Fourth Circuit declined to issue a writ in a case arising under the United States Constitution, recognizing that federal courts "have no power to acquire jurisdiction of a case or question by issuing a writ of mandamus. Their authority in this regard is limited to the issuance of writs of mandamus . . . in such cases . . . wherein jurisdiction has been obtained on other grounds and by other process." *Gurley v. Superior Court of Mecklenburg Cnty.*, 411 F.2d 586, 587 (4th Cir. 1969); *see also* 28 U.S.C. § 1651(a) (courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").

As Defendants admitted by removing this case, this Court has supplemental jurisdiction over LBCQ's state law claims, which arise out of the same operative facts as its federal claims. Consequently, the Court has jurisdiction to consider LBCQ's petition.

> **2.    Whether LBCQ has made a showing that it is entitled to a writ of mandamus**

LBCQ asks this Court to go beyond the "principal function" of a writ of mandamus by compelling application of the prior ordinance. Rather than merely "command and execute," LBCQ wants this Court to "inquire and adjudicate." *See Sanford*, 685 S.E.2d at 605. Although it is possible that application of the prior zoning ordinance may ultimately prove appropriate, as LBCQ hopes, the Court is unable to say it is "absolute, certain, and imperative." *Richland Cnty.*, 811

9

S.E.2d at 766.  It does not "aris[e] from fixed and designated facts." *Id.*  Nor is it "defined by law with such precision as to leave nothing to the exercise of discretion." *Id.*  In short—it is not ministerial.

Concerning LBCQ's request for the placement of the SEA on the BZA agenda, the Ordinance states that the BZA "will hear all applications for special exception permits and will render a decision in each matter." York Cnty. S.C. Code of Ordinances, Ch. 155, § 155.1064(A). It goes on to require that the BZA "hear a special exception request within 30 days of the date the application is deemed complete." *Id.* at § 155.1064(B).

LBCQ argues that due to the mandatory language of this provision and its previous version, its SEA should have been placed on the agenda as a matter of course.  Defendants, however, argue that because county officials have discretion to determine when a SEA is "deemed complete," the act of placing the SEA on the agenda is not ministerial.

The Court must read the Ordinance as a whole.  Special exception permits can no longer be issued for surface mining in the AGC District. *Id.* at § 155.271.  The Ordinance, then, could be interpreted as entirely barring the futile applications for such permits.  Because LBCQ is seemingly ineligible for a special exception permit, county officials may have used their discretion to deem that its SEA was incomplete—and impossible to complete—allowing Defendants to keep it off the BZA agenda.  *See id.* at § 155.959(A)(2) ("An application is not complete until the applicant submits all required items.").

Interpreting the Ordinance would require this Court to "inquire and adjudicate," so this duty is not ministerial.  *See Sanford*, 685 S.E.2d at 605.  Given the changes to the zoning ordinance, the duty is no longer "absolute" or "certain." *Richland Cnty.*, 811 S.E.2d at 766.  The obligations

10

of the BZA under the Ordinance are not "defined by law with such precision as to leave nothing to the exercise of discretion." *Id.*

Although the Court need not go further, it also notes that, as explained more fully below, LBCQ may have other legal remedy in the form of its administrative appeal. A writ of mandamus remains an extraordinary remedy that, for the reasons discussed below, the Court declines to order in this case. *See Sanford*, 685 S.E.2d at 605 (a writ of mandamus is "the highest judicial writ known to the law."). Accordingly, a writ of mandamus is improper in this case.

### B.     *Whether LBCQ is entitled to a Preliminary Injunction*

LBCQ fails to show entitlement under the heightened standard to the mandatory injunction it seeks. For the reasons discussed below, however, the motion fails under either a mandatory or a prohibitory injunction standard.

#### 1.     *Whether LBCQ is able to establish it is likely to succeed on the merits*

LBCQ raises many questions that it is unable to answer, undermining its insistence that preliminary relief is appropriate in this case. As above, whether the BZA should apply the zoning ordinance in effect at the time of LBCQ's initial application may be a question of law, but it is one neither party has fully briefed.

More importantly, although LBCQ predicts that the Administrative Appeals process will prove ineffectual, it does not know "if that is in fact the appellate track this controversy should be on." Pl. Rep. at 10. "[N]o § 1983 procedural due process violation exists when a party fails to exhaust both administrative and state court remedies that the government affords to them." *Rockville Cars, Inc. v. City of Rockville, Md.*, 891 F.3d 141, 149 (4th Cir. 2018). Defendants may have acted improperly by refusing to place LBCQ's SEA on the agenda for the SZA meetings. But it would be inappropriate for the Court to decide on the merits before LBCQ has exhausted

11

the appeals process. "After all, the constitutional violation actionable under § 1983 is not complete . . . unless and until the State fails to provide due process." *Id*. The Court must allow the opportunity to provide due process, to the extent it has been denied thus far.

LBCQ argues that if its appeal is the proper course of action in this case, the county failed to follow the proper procedure inasmuch as it did not inform LBCQ that the removal from the agenda constituted an appealable "final decision" or provide instructions for filing. Yet, it neglects to allege in its Amended Complaint that such a failure constitutes a procedural due process violation. LBCQ is unlikely to succeed on the merits.

### 2. *Whether LBCQ is likely to suffer irreparable harm in the absence of preliminary relief*

"Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Di Biase*, 872 F.3d at 230 (ellipsis in original) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). On the other hand, any deprivation of constitutional rights "for even minimal periods of time[] unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Thus, although much of the tangible harm allegedly caused to LBCQ could be rectified if the SEA is heard and granted at a later date with monetary damages, any period of violation of its due process rights would amount to irreparable harm. But, because there is no due process violation until any administrative appeals have been exhausted, LBCQ has yet to show irreparable harm. *Rockville Cars, Inc.*, 891 F.3d at 149.

### 3. *Whether the balance of equities tip in LBCQ's favor*

The Court agrees that "Plaintiff is seeking its full relief through a preliminary injunction," rather than merely preserving the status quo. Def. Br. at 11. As the Court has already observed, LBCQ is not only asking the Court to require that the BZA place its SEA onto the agenda for its next meeting, but also that the Court require the BZA apply an ordinance that is no longer in effect. If the Court granted such a request, and further litigation revealed that LBCQ's claim is meritless, York County and LBCQ could be in a worse position for relying on an erroneous zoning decision.

LBCQ may obtain full relief once this case is fully litigated. Waiting for the resolution of administrative and other remedies will not cause LBCQ an undue burden. In fact, it may result in the conclusion of this case without the need for extraordinary remedies from this Court. The balance of equities in this case thus weighs in favor of Defendants.

### 4. *Whether injunctive relief is in the public interest*

LBCQ is a private company seeking to conduct its own business. Although it claims that the surface mining on the property has "br[ought] economic value to the County and its citizens," it has failed to presented evidence that requiring the BZA to hear its application will benefit the public in any specific way. Pl. Br. at 3. Thus, the Court is unable to say that injunctive relief in this instance is in the public interest.

### V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court the Motion to Expedite Consideration is **GRANTED** and LBCQ's petition for writ of mandamus and motion for temporary injunction are **DENIED**.

**IT IS SO ORDERED.**

Signed this 19th day of April 2022, in Columbia, South Carolina.

                                                <u>s/ Mary Geiger Lewis</u>
                                                MARY GEIGER LEWIS
                                                UNITED STATES DISTRICT JUDGE